TOMÁS MEDINA GARAY y ROGELIO MEDINA GARAY, demandantes
y recurridos, *v.* GLADYS LUZ MEDINA GARAY ET AL., deman-
dados y peticionarios.

*Número:* CC-2002-655          *Resuelto:* 19 de mayo de 2004

808

*Jorge Calero Blanco*, abogado de la parte peticionaria; *Gustavo A. Quiñones Pinto*, abogado de la parte recurrida; *Máximo Molina Fragoso*, abogado de los codemandados.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 16 de octubre de 1972 Don Juan Tomás Medina y su esposa Doña Gloria Garay vendieron a su hija, Doña Carmen Lidia Medina Garay, dos parcelas de terreno (denominadas como A y B), por una cantidad total de $5,000. En ese momento la Sra. Carmen L. Medina Garay se encontraba casada con el Sr. Miguel Ángel Ortiz. Luego de la mencionada venta, el matrimonio Ortiz-Medina presentó

una solicitud de expediente de dominio ante el Tribunal de Primera Instancia, Sala Superior de Humacao, para acreditar a su favor el dominio sobre las parcelas A y B. La referida solicitud fue declarada "con lugar" mediante Resolución de 26 de julio de 1974, ordenándose así que dichas parcelas fueran inscritas en el Registro de la Propiedad de Puerto Rico, Sección de Humacao, a favor del matrimonio peticionario Ortiz-Medina.[1]

Don Juan Tomás Medina y su esposa doña Gloria Garay fallecieron.[2] Mediante resolución sobre declaratoria de herederos, emitida por el tribunal de instancia, fueron declarados *herederos* de éstos las personas siguientes: Tomás, Rogelio, Gladys Luz, Carmen Lidia *y Noemí*, todos de apellidos *Medina Garay*, así como los nietos de los causantes, Domingo y Reina Medina Vidal, quienes figuran como herederos en representación del hijo premuerto Domingo Medina Garay, y a Ruth Lillian y Daisy Luz Medina Díaz, en representación del también hijo fallecido Severino Medina Garay.[3]

El 1 de mayo de 1992, mediante la Escritura de Compraventa Núm. 29, otorgada ante el notario Juan Antonio

---

[1] La parcela A está compuesta de noventa centavos de cuerda, radicada en el Barrio Cabezas de Fajardo, donde enclavaba, en aquel momento, una casa de madera. Dicha parcela fue inscrita el 18 de septiembre de 1974 en el Registro de la Propiedad de Puerto Rico, Sección de Fajardo, bajo la primera inscripción de la finca 8,060, al Folio 280 del Tomo 216 de Fajardo. La misma parcela A fue inscrita nuevamente en el mismo Registro de la Propiedad de Puerto Rico, Sección de Fajardo, el 20 de julio de 1988, como la finca 14,278, inscrita al Folio 1 del Tomo 333.

Por su parte, la parcela B está compuesta de doce centavos de cuerda, radicada en el Barrio Cabezas de Fajardo. Ésta fue inscrita en el Registro de la Propiedad de Puerto Rico, Sección de Fajardo, al Folio 285 del Tomo 216, mediante primera inscripción de la finca 8,061, efectuada el 18 de septiembre de 1974. Esta misma parcela fue inscrita por segunda vez en el mismo Registro de la Propiedad, Sección de Fajardo, el 20 de julio de 1988, al Folio 6 del Tomo 333, finca 14,279. De los autos del caso no se desprende la razón de la doble inscripción de ambas fincas.

En la parcela B enclavaba una estructura de concreto y hormigón, propiedad de la Sra. Gladys Luz Medina Garay y su esposo Isaías García Estrada. Apéndice, pág. 113.

[2] Del expediente del caso surge que la Sra. Gloria Garay y el Sr. Juan Tomás Garay fallecieron el 1ro de junio de 1980 y el 27 de noviembre de 1984, respectivamente.

[3] La resolución sobre declaratoria de herederos se emitió el 28 de mayo de 1995.

Aquino Barrera, el Sr. Miguel Ángel Ortiz y la Sra. Carmen Lidia Medina Garay vendieron a El Conquistador Partnership, L.P. (El Conquistador) la parcela B por la cantidad de $45,000. Además, en esa misma fecha la Sra. Gladys Luz Medina Garay y su esposo Isaías García Estrada otorgaron un acuerdo con El Conquistador donde los primeros cedieron al segundo cualquier derecho que éstos tuviesen sobre la estructura enclavada en la parcela B, la cual poseían en aquel momento. El precio de este último acuerdo fue de $26,000.

Así las cosas, el 23 de junio de 1992 los Sres. Tomás Medina Garay y Rogelio Medina Garay presentaron una demanda ante el Tribunal de Primera Instancia, Sala Superior de Humacao, contra Carmen Lidia Medina Garay, Miguel Ángel Ortiz, la sociedad legal de gananciales compuesta por ambos, Gladys Luz Medina Garay, *Noemí Medina Garay*, Domingo Medina Vidal, Reina Medina Vidal, Ruth Lillian Medina, Daisy Luz Medina, El Conquistador y Kumagai Caribbean, Inc. Alegaron, en síntesis, que la venta llevada a cabo entre los codemandados Carmen Lidia Medina, Miguel Ángel Ortiz y los causantes de la sucesión Medina-Garay –el matrimonio compuesto por don Juan Tomás Medina y doña Gloria Garay– era nulo e inexistente por ausencia de causa. Arguyeron, además, que dichos codemandados vendieron la parcela B a El Conquistador sin consultar ni pagar ninguna partida a los demandantes recurridos, quienes tenían derecho a una cantidad por ser parte de la sucesión Medina-Garay.

Al tratar de diligenciar los correspondientes emplazamientos, los demandantes no pudieron localizar a una de las codemandadas nombrada como tal en la demanda original, *la Sra. Noemí Medina Garay*, para emplazarla personalmente. Por tal razón, luego de evaluar la declaración jurada sometida por los demandantes a esos efectos, el *29 de julio de 1992* el Tribunal de Primera Instancia ordenó que se emplazara a dicha persona mediante edictos

conforme las disposiciones de la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La referida orden dispuso, en síntesis, que

[l]a publicación de tal edicto se hará en un periódico de circulación diaria general en la Isla de Puerto Rico, una sola vez y *dentro de diez días siguientes a la publicación de dicho edicto*, se le dirigirá a la co-demandada por correo certificado con acuse de recibo, *una copia del emplazamiento y de la demanda presentada al lugar de su última dirección conocida.* Transcurridos treinta (30) días de haberse publicado el edicto sin que las personas notificadas comparecieren, según lo dispone la Regla 10.1 de las de Procedimiento Civil, el caso seguirá su trámite. (Énfasis suplido.) Apéndice, pág. 260.

El 13 de julio de 1994, *esto es, a dos años de emitida esta orden,* se publicó el emplazamiento mediante edictos en el periódico *El Vocero de Puerto Rico. De los autos del caso no surge que la parte demandante haya solicitado una prórroga para diligenciar el emplazamiento.* Copia del emplazamiento y la demanda fueron enviados a la última dirección conocida de la codemandada Noemí Medina Garay mediante correo certificado. Del sobre donde se enviaron dichos documentos *surge como fecha de envío el 13 de noviembre de 1996. De los autos del caso no se desprende la razón para la dilación de más de dos años desde la publicación del edicto para enviar por correo certificado copia de la demanda y del emplazamiento.*

No obstante, el 24 de febrero de 1997 la parte demandante solicitó ante el foro primario que se le anotara la rebeldía a la parte codemandada Noemí Medina Garay. El tribunal de instancia *no tomó acción alguna con referencia a dicha solicitud*; tampoco se dictó sentencia en rebeldía en contra de esta codemandada. *Resulta importante señalar que la Sra. Noemí Medina Garay nunca compareció ante el tribunal de instancia ni se le notificó de los escritos some-*

*tidos ante el foro primario durante la vigencia de este litigio.*([4])

Así las cosas y luego de los trámites de rigor, el tribunal de instancia celebró la vista en su fondo, dictó sentencia el 31 de marzo de 2000 y archivó en autos copia de la notificación el 3 de abril de 2000.([5]) Mediante dicha sentencia, el foro primario resolvió, en síntesis, que el contrato de compraventa suscrito entre el matrimonio Ortiz-Medina y los fenecidos Gloria Garay y Tomás Medina carecía de causa y, por lo tanto, *era nulo e inexistente.* Decretó, además, que El Conquistador no gozaba de la protección de la fe pública registral, debido a la doble inmatriculación de la parcela adquirida. En cuanto a los demás miembros de la sucesión, el tribunal de instancia concluyó que tanto la parcela A como el valor de la parcela B y el valor de la estructura antes localizada en esta última —la cual fue demolida por razón de una construcción realizada posteriormente por el Estado Libre Asociado de Puerto Rico— correspondía por partes iguales a los demandantes y demandados pertenecientes a la sucesión Medina-Garay. Por tal razón, *ordenó que la finca A revirtiera a la sucesión para ser dividida entre los herederos* y determinó que El Conquistador y el matrimonio Ortiz-Garay respondían solidariamente por el pago del valor de la finca B y la estructura demolida, ello en vista de que dicha parcela había sido cedida por El Conquistador a un tercero.

Inconforme con este proceder, El Conquistador acudió oportunamente ante el entonces Tribunal de Circuito de Apelaciones mediante un recurso de apelación. En síntesis, argumentó que la acción de los demandantes había prescrito bajo el Art. 1857 del Código Civil, 31 L.P.R.A. sec.

---

([4]) Cabe señalar que el tribunal de instancia anotó la rebeldía de otros codemandados y, así, dictó sentencia en rebeldía contra éstos.

([5]) Esta notificación fue reemplazada por la notificación enmendada de 24 de abril de 2000.

5278. Arguyó, además, que incidió el foro primario al concluir que la Escritura de Compraventa suscrita entre los codemandados Ortiz-Medina y los causantes de la sucesión Medina-Garay era nula e inexistente y, también, al decretar que El Conquistador no era un tercero registral.

Así las cosas, el 31 de octubre de 2000 la parte demandante recurrida presentó una moción de desestimación ante el foro apelativo intermedio. Arguyó, en síntesis y en lo aquí pertinente, que la parte apelante, El Conquistador, omitió notificar su *escrito de apelación* a la codemandada Noemí Medina Garay dentro del término jurisdiccional para presentar dicho escrito, por lo que el tribunal apelativo intermedio carecía de jurisdicción para atender el recurso. El Conquistador se opuso a dicha moción, arguyendo que no notificó a Noemí Medina Garay *toda vez que ésta no era "parte" en el litigio*; basó su argumento en que diversas irregularidades en el emplazamiento de la Sra. Noemí Medina Garay *impidieron que el foro primario adquiriese jurisdicción sobre su persona* y, en consecuencia, que pudiese considerarse como "parte" para fines de notificación del escrito en cuestión.

Acogiendo los planteamientos de la parte demandante, el foro apelativo intermedio emitió resolución en la cual *desestimó* el recurso.([6]) En síntesis, el referido foro sostuvo que no se notificó el recurso de apelación presentado por El Conquistador a una de las "partes" en el litigio, la Sra. Noemí Medina Garay, dentro del término jurisdiccional para presentar el referido recurso. Por tal razón, dicho foro se decretó sin jurisdicción. La parte aquí peticionaria solicitó reconsideración, la cual fue declarada "no ha lugar".([7])

Insatisfecho, El Conquistador acudió ante nos —vía *certiorari*— imputándole al Tribunal de Apelaciones haber errado al "resolver que carecía de jurisdicción para enten-

---

([6]) Resolución emitida el 29 de mayo de 2002 y notificada el 5 de junio de 2002.

([7]) Ello mediante Resolución de 25 de junio de 2002 y notificada el 27 de junio de 2002.

der en el recurso de apelación presentado por El Conquistador".

*Expedimos* el recurso. Contando con las comparecencias de ambas partes y estando en posición de resolver, procedemos a hacerlo.

## I

■ Sabido es que el recurso apropiado para revisar una "sentencia final" emitida por el Tribunal de Primera Instancia es el de apelación.[8] Es harto conocido que el término para presentar el referido recurso es *jurisdiccional.*[9] Asimismo, la Regla 53.2(d) de Procedimiento Civil, según enmendada por la Ley Núm. 249 de 25 de diciembre de 1995 (32 L.P.R.A. Ap. III), y la Regla 13(B) del anterior Reglamento del Tribunal de Circuito de Apelaciones (ahora Tribunal de Apelaciones), 4 L.P.R.A. Ap. XXII-A, *disponen para la notificación a todas las partes*, o sus abogados de récord, del recurso de apelación incoado ante el Tribunal de Apelaciones, *dentro del término jurisdiccional para presentarlo.*

■ A tono con lo anterior, este Tribunal ha sido enfático al resolver que la notificación a las partes, o sus abogados, *es un requisito jurisdiccional*, si se trata de un recurso que debe ser presentado dentro de *un plazo clasificado como jurisdiccional* y la ley o reglas procesales disponen que dicho recurso debe notificarse *dentro del re-*

---

[8] La Ley de la Judicatura de 1994 (4 L.P.R.A sec. 22k(a)) fue derogada mediante la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003. El Art. 4.006 de la ley vigente, 4 L.P.R.A. sec. 24y, al igual que la derogada, confiere la competencia al Tribunal de Apelaciones para conocer del recurso de apelación de toda sentencia final dictada por el Tribunal de Primera Instancia.

[9] Regla 13(B) del anterior Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. Véanse, además: Regla 13(A) y (B) del Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de 2003, págs. 19–22; Ley Núm. 201 de 22 de agosto de 2003, Leyes de Puerto Rico, pág. 970.

*ferido periodo.*([10]) En consecuencia, son *dos* los requisitos jurisdiccionales en la presentación de recursos de apelación —ante el Tribunal de Apelaciones— de sentencias finales dictadas en casos civiles provenientes del Tribunal de Primera Instancia, a saber: (i) el *término* para presentar el recurso y (ii) la *notificación* del recurso a las demás partes *dentro* del mismo plazo.([11])

■ No obstante, las referidas piezas legislativas no definen ni establecen con precisión el concepto "parte". Es por ello que en *Acosta v. ABC, Inc.*, 142 D.P.R. 927 (1997), establecimos que dichas disposiciones de ley parten de la premisa de que los dictámenes que revisa un tribunal apelativo, de ordinario, son el resultado de una contienda entre personas sobre las cuales el tribunal adquirió jurisdicción. *Esto es, el concepto "parte" va enlazado al de jurisdicción sobre la persona.*([12])

■ Similarmente, en la esfera civilista el término "parte" va atado a que la persona haya sido notificada del litigio. A esos efectos, el Tribunal Supremo de España ha entendido que "parte" es aquel a quien propiamente se le ha dado aviso del procedimiento en su contra. A esos efectos, dicho tribunal estableció lo siguiente:

> "... si por providencia de 23 de Nov. 1983 fue tenida por personada, entendiéndose con ella las posteriores actuaciones, en realidad se le proveyó del carácter de parte en los menciona-

---

([10]) *Colón Morales v. Rivera Morales*, 146 D.P.R. 930 (1998). Véase, además, H.A. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 185.

([11]) Véanse: *Méndez v. Corp. Quintas San Luis*, 127 D.P.R. 635 (1991); *González Santos v. Bourns P.R., Inc.*, 125 D.P.R. 48, 57 (1989); Sánchez Martínez, *op. cit.*, págs. 185–186. Véanse, además: Regla 13(A) y (B) del Reglamento Transitorio del Tribunal de Apelaciones, ante; Leyes de Puerto Rico, ante.

([12]) Sobre este particular, el importante concepto de "parte" ha sido definido en la jurisdicción norteamericana de la forma siguiente: "A person who is named as a party to an action *and subjected to the jurisdiction of the court is a party to the action.*" *Restatement on Judgments 2d*, Sec. 34. Véanse, además: *Mitchell v. Banking Corporation*, 264 P. 127 (1928); *Bennet v. Bird*, 261 N.Y.S. 540 (1933); *Behar v. Savard*, 21 F.R.D. 367 (S.D. N.Y. 1958).

dos autos a partir de entonces dado que en el ámbito procesal tener por personado a un demandado que es llamado a juicio significa proveerle de la consideración de parte, ya que lo contrario conduciría al absurdo de dar intervención a una persona en el proceso sin depararle posibilidad de actuación en él. Si ciertamente en la Lec. falta por completo el concepto de parte y tampoco es fácil inducirlo de las normas particulares que emplean con frecuencia este término o el de litigante, sin embargo, cabe entender que su consideración viene determinada o configurada, bien por la persona que pide o bien por la persona frente a quien se pide del órgano jurisdiccional la actuación de una pretensión, y, por tanto, si el acto de comparecencia viene producido por la actividad inicial de un sujeto por el cual éste figura jurídicamente en un proceso, *se puede hablar de la comparecencia como un derecho a presentarse y a actuar en un proceso, que es precisamente lo que configura el carácter de parte, una vez producida la llamada al susodicho procedimiento.*" (STS 9 Jun. 1986; RAJ 3301). M.Á. Fernández y otros, *Derecho Procesal Práctico*, Madrid, Ed. Centro de Estudios Ramón Areces, 1998, Vol. I, págs. 541–542 esc. 1.

■ Lo anteriormente expuesto es cónsono con la norma ampliamente conocida de que los tribunales debemos ser celosos guardianes del ejercicio de nuestra jurisdicción y que para poder ejercitar válidamente dicha autoridad, debemos poseer jurisdicción sobre la materia y sobre las personas involucradas en el litigio. *Shuler v. Shuler*, 157 D.P.R. 707 (2002); *Juliá et al. v. Epifanio Vidal, S.E.*, 153 D.P.R. 357 (2001).

■ En ocasión de expresarnos sobre el tema de la jurisdicción *in personam*, hemos establecido la norma de que cada estado posee jurisdicción sobre los demandados, siempre y cuando éstos estén domiciliados o se encuentren dentro de sus límites territoriales.[13] *Shuler v. Shuler*, ante; *Peguero y otros v. Hernández Pellot*, 139 D.P.R. 487

---

[13] Ello va acorde con la cláusula del debido proceso de ley de la Constitución de Estados Unidos y la de Puerto Rico, las cuales limitan la autoridad y el poder de los tribunales para asumir jurisdicción y dictar sentencias contra personas o entidades que no residen dentro de su territorio. Véanse: *Shuler v. Shuler*, 157 D.P.R. 707 (2002); *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

(1995). Véase, además, *Pennoyer v. Neff*, 95 U.S. 714 (1877).

■ No obstante lo anterior, la regla general sobre jurisdicción *in personam* tiene sus excepciones. En caso de configurarse una de estas excepciones, los tribunales pueden ejercer jurisdicción sobre la persona de un demandado no domiciliado, esto es, ausente de los límites territoriales. *Shuler v. Shuler*, ante; *Ind. Siderúrgica v. Thyessen Steel Caribbean*, 114 D.P.R. 548 (1983).

Asimismo, aquella parte que comparece voluntariamente, y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal. *Shuler v. Shuler*, ante; *Qume Caribe, Inc. v. Srio. de Hacienda*, 153 D.P.R. 700 (2001); *Márquez v. Barreto*, 143 D.P.R. 137 (1997).

■ Ahora bien, cualquiera que sea la base que el tribunal tenga para adquirir jurisdicción sobre una persona, no hay duda de que el emplazamiento es el mecanismo procesal mediante el cual se le notifica al demandado que existe un procedimiento judicial en su contra y por medio de éste, el tribunal *adquiere* jurisdicción sobre dicha persona. *Rivera Báez v. Jaume*, 157 D.P.R. 562 (2002); *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901 (1998); *Acosta v. ABC, Inc.*, ante. De esta forma, hemos señalado que la falta del diligenciamiento del emplazamiento (personal o mediante edictos) priva de jurisdicción sobre la persona al tribunal, *ya que es en ese momento que se adquiere jurisdicción sobre ésta. Báez v. Jaume*, ante; *Acosta v. ABC, Inc.*, ante, pág. 931. En fin, el emplazamiento es el primer paso para salvaguardar el debido proceso de ley. *Acosta v. ABC, Inc.*, ante, pág. 931; *Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15 (1993).

■ Cónsono con lo anterior, hemos reiterado en diversas ocasiones que, como norma general, es necesario un cumplimiento estricto con los requisitos exigidos para el

emplazamiento. *Chase Manhattan Bank v. Polanco Martínez*, 131 D.P.R. 530, 535 (1992) (citando a *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986)). Lo anterior cobra todavía más importancia cuando se está ante un emplazamiento mediante edictos en sustitución de la notificación personal, *el cual requiere un cumplimiento riguroso, fiel y estricto.* Véanse: *Reyes v. Oriental Fed. Savs. Bank*, ante, pág. 21; *Márquez v. Barreto*, ante, pág. 143; *Marrero et al. v. Vázquez et al.*, 135 D.P.R. 174 (1994).

En cuanto al emplazamiento mediante edictos se refiere, éste se utiliza cuando se da cualquiera de las circunstancias siguientes: (i) la persona que ha de ser emplazada se encuentra fuera de Puerto Rico; (ii) dicha persona es un no domiciliado y se cumple con cualquiera de las instancias expuestas en la Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III;[14] (iii) cuando, estando en Puerto Rico, la persona no pudiese ser localizada después de realizadas las diligencias pertinentes; (iv) la persona se ocultase para no ser emplazada, o (v) la entidad que ha de ser emplazada fuese una corporación extranjera sin agente residente. Regla 4.5 de Procedimiento Civil, ante. De cumplirse con alguno de estos supuestos, el tribunal podrá hacer efectiva su jurisdicción *in personam, únicamente mediante un emplazamiento vía edictos bien diligenciado que cumpla con las Reglas de Procedimiento Civil.*[15]

---

[14] Esto es, cuando un demandado es un no domiciliado, los tribunales de Puerto Rico tendrán jurisdicción sobre éste si cumple con cualquiera de los supuestos especificados en la Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Dicho de otro modo, nuestros tribunales tendrán jurisdicción si se cumple con la doctrina de los contactos mínimos. Este tipo de estatuto se conoce comúnmente como de largo alcance (*long-arm statutes*). Éstos fueron desarrollados de acuerdo con la jurisprudencia interpretativa del debido proceso de ley del Tribunal Supremo de Estados Unidos. Véanse: *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Shuler v. Shuler*, ante. La Regla 4.7 de Procedimiento Civil, ante, dispone para el emplazamiento mediante edictos en este tipo de situación.

[15] Es preciso aclarar que en el caso de demandados ausentes de Puerto Rico, el demandante podrá sustituir la notificación mediante edictos con la entrega personal al demandado de copias de la demanda y del emplazamiento. En este tipo de caso el diligenciamiento se hará de acuerdo con lo dispuesto en la Regla 4.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase Regla 4.5 de las de Procedimiento Civil, ante.

■ Entre las formalidades que exige la citada Regla 4.5 de Procedimiento Civil sobre emplazamiento mediante edictos está la *orden* que dictará el tribunal. A esos efectos establece, en lo aquí pertinente, que

[l]a orden dispondrá que la publicación se haga una sola vez en un periódico de circulación diaria general de la Isla de Puerto Rico. La orden dispondrá, además, *que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija al demandado una copia del emplazamiento y de la demanda presentada*, por correo certificado con acuse de recibo o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo siempre y cuando dicha entidad no posea vínculo alguno con la parte demandante y no tenga interés en el pleito, *al lugar de su última residencia conocida*, a no ser que se justifique por declaración jurada que a pesar de los esfuerzos realizados, con expresión de éstos, no ha sido posible localizar residencia alguna conocida del demandado, en cuyo caso el tribunal excusará el cumplimiento de esta disposición. (Énfasis suplido.) 32 L.P.R.A. Ap. III, R. 4.5.

■ Cabe señalar, además, que el emplazamiento mediante edictos *debe ser diligenciado* dentro de los seis meses de haber sido expedido. Ello en virtud de las disposiciones de la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, y su jurisprudencia interpretativa. Véanse: *First Bank of P.R. v. Inmob. Nac., Inc.*, ante, pág. 917; *Acosta v. ABC, Inc.*, ante; *Núñez González v. Jiménez Miranda*, 122 D.P.R. 134 (1988). A manera de resumen, entre los requisitos más importantes del emplazamiento mediante edictos se encuentran: (i) la declaración jurada inicial donde se disponen las diligencias efectuadas para localizar a la persona a ser emplazada; (ii) que se le envíe al demandado por correo certificado, a su última dirección conocida, dentro de los diez días luego de expedida la orden para que se emplace mediante edictos, copia de la demanda y del emplazamiento, y (iii) el diligenciamiento del emplazamiento dentro de los seis meses luego de ser expedido. Reglas 4.3, 4.5 y 4.7 de Procedimiento Civil, ante. Véanse, además: *Monell v. Mun. de Carolina*, 146

D.P.R. 20, 25 (1998); *First Bank of P.R. v. Inmob. Nac., Inc.*, ante.

Sobre el tema del cumplimiento estricto con los requisitos del emplazamiento mediante edictos, en *Márquez v. Barreto*, ante, concluimos que el foro primario no adquirió jurisdicción sobre la persona de la demandada en cuanto a una de las causas de acción incoadas en su contra, en específico la de separación de bienes. Ello en vista de que la Regla 4.5 de Procedimiento Civil, ante, exige que en el edicto se haga constar, entre otras cosas, la naturaleza del pleito. En el referido caso no se cumplió con este requisito, ya que sólo se dispuso que el pleito era sobre divorcio, cuando en realidad era un pleito con dos causas de acción, una de divorcio y otra de división de bienes. En este caso reiteramos la importancia de que el emplazamiento mediante edictos se publique y se envíe copia de éste y de la demanda a la última dirección conocida de la persona. En cuanto a este extremo expresamos que:

> El hecho de que se le enviara a la señora Márquez Resto, a su última dirección conocida, por correo certificado con acuse de recibo, una copia del emplazamiento y la demanda, no subsana esta omisión. Es la combinación de ambos requisitos, la publicación del edicto con toda la información requerida y el envío de la copia del emplazamiento y la demanda a la última dirección conocida de la parte demandada, lo que hace que este mecanismo de emplazamiento mediante edicto tenga una probabilidad razonable de notificar a la parte demandada sobre las acciones entabladas en su contra, permitiéndole así poder hacer una decisión informada sobre si comparece o no a defenderse. *Márquez v. Barreto*, ante, págs. 147–148.

En *Reyes v. Oriental Fed. Savs. Bank*, ante, concluimos que presentar una declaración jurada o una certificación que compruebe las diligencias efectuadas para emplazar personalmente al demandado, previo a solicitar un emplazamiento mediante edictos, es parte integral del procedimiento para emplazar vía edictos. Por esa razón decretamos que la omisión de presentar documentos que com-

prueben lo antes dispuesto inciden de manera fatal sobre la jurisdicción sobre la persona del demandado, aun cuando se haya otorgado erróneamente la autorización para emplazar. *En dicho caso nuevamente reiteramos la norma de la obligación de cumplir estrictamente con los procedimientos para emplazar mediante edictos.*

Por otro lado, en *Ortiz v. The Crescent Trading Co.*, 69 D.P.R. 501 (1949), este Tribunal concluyó que el foro primario no adquirió jurisdicción sobre la persona del demandado, ya que en la orden para emplazar vía edictos no se dispuso que al tiempo de hacerse la primera publicación del edicto se le dirigiera a los demandados copia del emplazamiento y de la demanda. Ello aun cuando a los demandados se les había enviado copia del emplazamiento y de la demanda.([16])

Forzosa resulta la conclusión, en consecuencia, que para que una persona sea considerada "parte" con el fin de notificarle un escrito de apelación, *es necesario que*

---

([16]) Las diferentes jurisdicciones norteamericanas han adoptado un enfoque similar al nuestro al exigir el cumplimiento estricto de los estatutos referentes al emplazamiento mediante edictos. A esos efectos, la doctrina puede ser resumida de la siguiente forma:

"The procedure prescribed by a statute or rule for substituted or constructive service must be strictly pursued. There must be strict compliance with the requirements of statutes authorizing substituted or constructive service ....

"Where, by local law, substituted or constructive service is in certain situations authorized in the place of personal service when the latter is inconvenient or impossible, *a strict and literal compliance with the provisions of the law must be shown* in order to support the judgment based on such substituted or constructive service. *Jurisdiction is not to be assumed* and exercised on the general ground that the subject matter of the suit is within the power of the court. *The inquiry must be as to whether the requisites of the statute have been complied with, and such compliance must appear on the record.* The fact that the defendant had actual knowledge of attempted service does not render the service effectual if in fact the process was not served in accordance with the requirements of the statute. Moreover, where the judge states the terms and conditions for substituted service, they must be followed. *Since a long-arm statute provides an extraordinary method for securing jurisdiction, clear and complete compliance with its provisions is required.*" Véase, además, 62B Am Jur 2d, Sec. 151, págs. 730.

De igual forma, el Tribunal Supremo español ha establecido que los requisitos de emplazamiento, ya sea personal o mediante edictos, son imprescindibles para la validez y firmeza de la resolución que en su día se emita. Véase: *Leyes Procesales Civiles*, 2da ed., Aranzandi, Pamplona, 1997, págs. 168–169.

*sobre dicha persona se haya adquirido jurisdicción.* Ello, como hemos visto, ocurre mediante un emplazamiento bien diligenciado.([17]) A esos efectos, en *Acosta v. ABC, Inc.*, ante, pág. 931, expresamos:

> Procesalmente, el concepto *parte* está inexorablemente atado al de *jurisdicción sobre la persona* (el demandante —actor o promovente original— que se somete voluntariamente al presentar la acción y el demandado que es notificado mediante emplazamiento). Su citación o emplazamiento representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial. *Reyes Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15 (1993); *Pagán v. Rivera Burgos*, 113 D.P.R. 750, 754 (1983). Por tal razón, consistentemente hemos resuelto que la falta de diligenciamiento del emplazamiento (personal o por edictos) priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra. No es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente *parte*, aunque haya sido *nombrada* en el epígrafe de la demanda, hasta ese momento sólo es *parte nominal.*

## II

Con este trasfondo doctrinal en mente, analizamos los hechos ante nos. Como señaláramos, la codemandada Nancy Medina Garay figuró en el acápite de la demanda original instada el 23 de junio de 1992 por los aquí recurridos. Para poder ejercer su jurisdicción sobre dicha codemandada y luego de evaluar la declaración jurada presentada por los demandantes recurridos, el tribunal de instancia ordenó que Noemí Medina Garay fuera emplazada mediante edictos.

Ahora bien, la referida orden fue emitida el 29 de julio de 1992 y notificada al abogado de los demandantes recurridos el 6 de agosto de 1992. No obstante, el emplazamiento fue publicado casi dos años después de la mencio-

---

([17]) *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *Acosta v. ABC, Inc.*, 142 D.P.R. 927 (1997).

nada orden. Esto es, el emplazamiento vía edictos se publicó en el periódico *El Vocero de Puerto Rico* el *13 de julio de 1994*. No hay prueba en el expediente de que se haya solicitado una prórroga para diligenciar este emplazamiento. Es más, la misma parte demandante recurrida *acepta* que se publicó el emplazamiento tardíamente y en violación a la Regla 4.3(b) de Procedimiento Civil, ante, en cuanto ésta dispone un término de seis meses para diligenciar el emplazamiento. Véanse: *First Bank of P.R. v. Inmob. Nac., Inc.*, ante; *Acosta v. ABC, Inc.*, ante; *Núñez González v. Jiménez Miranda*, ante.

Es de advertir, *además*, que lo anterior no es el único incumplimiento en el diligenciamiento del emplazamiento aquí en cuestión. Como señaláramos, la orden del tribunal de instancia que autoriza el emplazamiento vía edictos contenía la disposición requerida por ley a los efectos de que, *diez días luego de la publicación del edicto*, debía enviársele a la parte demandada copia del emplazamiento y de la demanda a su última dirección conocida, por correo certificado. En el caso de autos la parte demandante tampoco cumplió con esta disposición. No fue sino hasta el 13 de noviembre de 1996, *es decir, más de dos años después de publicado el emplazamiento y más de cuatro años de haber sido expedida la orden*, que la parte demandante recurrida envió copia de la demanda y el emplazamiento por correo certificado a la alegada "última dirección conocida" de la codemandada Noemí Medina Garay.

Debemos destacar que los demandantes recurridos solicitaron que se le anotara la rebeldía a esta codemandada el 24 de febrero de 1997. Sin embargo, el tribunal de instancia no anotó la rebeldía de esta demandada ni dictó sentencia en rebeldía. No obstante, el foro primario sí anotó la rebeldía de otros codemandados. Evidentemente, la denegatoria de anotar la rebeldía de la codemandada Noemí Medina Garay se debió a las irregularidades en el diligenciamiento del emplazamiento aquí en cuestión.

En vista de los crasos incumplimientos en el diligencia-
miento del emplazamiento de la codemandada Noemí Me-
dina Garay, necesariamente tenemos que concluir que el
foro primario *no* adquirió jurisdicción sobre su persona *y,
en consecuencia, ésta no era parte en el pleito.* Por tal ra-
zón, la referida codemandada *no* tenía que ser notificada
del recurso de apelación aquí en cuestión. Estamos impe-
didos de avalar las actuaciones de la parte demandante
recurrida, a saber: incumplir inexcusablemente con varios
requisitos de cumplimiento estricto en el diligenciamiento
de un emplazamiento mediante edicto; no permitir de esta
forma que se adquiriera jurisdicción sobre la codemandada
Noemí Medina Garay, y entonces alegar que ésta era una
"parte" en el pleito que debía ser notificada del escrito de
apelación. Lo contrario sería desviarnos de la norma antes
esbozada en cuanto a que, para que una persona sea con-
siderada "parte", el tribunal de instancia debe de adquirir
jurisdicción *in personam* sobre ésta. Debido a las faltas en
el diligenciamiento del emplazamiento aquí en cuestión,
ello no ocurrió.

### III

Por los fundamentos antes esbozados, *se revoca la reso-
lución dictada por el entonces Tribunal de Circuito de Ape-
laciones, Circuito Regional VI de Caguas, Humacao y Gua-
yama, que había desestimado el recurso incoado por la
parte aquí peticionaria El Conquistador, y se devuelve el
caso al referido foro para procedimientos ulteriores compa-
tibles con lo aquí resuelto.*[18]

*Se dictará sentencia de conformidad.*

---

[18] En vista de que nuestro derecho es un derecho rogado, nos hemos limitado a resolver la controversia planteada ante nos; esto es, si la codemandada Noemí Medina Garay era o no "parte" en el pleito ante el tribunal de instancia para fines de notificarle el escrito de apelación incoado por El Conquistador ante el Tribunal de Apelaciones. Véanse: *S.L.G. Lloréns v. Srio. de Justicia*, 152 D.P.R. 2 (2000); *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.*, 135 D.P.R. 303 (1994).

La Jueza Presidenta Señora Naveira Merly no intervino. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino.