Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BAUTISTA REO PR CORP.<br><br>Peticionaria<br><br>v.<br><br>SUCN. MERCEDES GONZÁLEZ VÁZQUEZ Y OTROS<br><br>Recurridos | KLCE202401170 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso núm.: CG2024CV02015 (702)<br><br>Sobre: Ejecución de Hipoteca; Propiedad Residencial |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

El Tribunal de Primera Instancia ("TPI") denegó una solicitud de autorización para emplazar por edicto a los hijos de quien era co-dueño de unos inmuebles objeto de una demanda de ejecución de hipotecas *in rem*. Según se explica en detalle a continuación, concluimos que erró el TPI, pues la parte demandante sustentó debidamente, con referencia a gestiones específicas, los intentos infructuosos de ubicar a los demandados pertinentes.

I.

En junio de 2024, Bautista Reo PR Corp. (el "Demandante") presentó la acción de referencia, sobre ejecución de hipotecas *in rem*, en contra del Sr. Mercedes González Vázquez (el "Causante"), la Sra. Carmen Lilliam Amalbert Conde (la "Viuda") y la sociedad de gananciales compuesta por ambos.

En síntesis, se alegó que los demandados hipotecaron tres inmuebles ubicados en una misma calle en Caguas (las "Propiedades"). El Demandante reconoció que las deudas subyacentes fueron objeto de una "orden de descargo" en el

"Tribunal Federal de Quiebras para el Distrito de Puerto Rico".  No obstante, alegó que era el sucesor del banco que realizó los préstamos hipotecarios y que tenía derecho a ejecutar las hipotecas otorgadas en garantía de los préstamos cuyos términos fueron incumplidos por los demandados.

El mes siguiente, se presentó una demanda enmendada, en atención a que el Demandante supo que el Causante había fallecido en julio de 2022.  Por tanto, se añadieron como demandados a los hijos del Causante (Joel González Ramos, Maribel González, Arnaldo González y Omar González, o los "Hijos").  Además, por desconocer si podrían existir otros herederos del Causante, se incluyeron como demandados a Fulano de Tal y Mengana Más Cual, "como partes con posible interés en la sucesión" del Causante.  El TPI autorizó la enmienda a la Demanda y la sustitución del Causante por los integrantes de su sucesión.

El Demandante también solicitó al TPI que autorizara el emplazamiento por edictos de tres de los Hijos (Maribel, Arnaldo y Omar).  Se acompaño una declaración jurada preparada por una emplazadora (la "Primera Declaración").  En la misma se consigna que la emplazadora habló con la Viuda, quien le informó que los Hijos "ya repudiaron la herencia" del Causante.  Aseveró que la Viuda no suplió el segundo apellido de los Hijos, ni sus direcciones o teléfonos, mas sí le indicó que Maribel y Arnaldo viven en North Carolina, y Omar en Michigan.

En la Primera Declaración, también se consigna que la emplazadora visitó las Propiedades y que "las mismas estaban abandonadas, se veían vacías y estaban muy deterioradas en pintura, y reja, a través de los cristales se veía que había mucha basura en el interior".

La emplazadora afirmó que había hecho una búsqueda en varias plataformas de internet (*google, facebook, superpagespr*), mas

no había encontrado información que le permitiese ubicar a los Hijos. También indicó que había acudido a la alcaldía y al cuartel de la Policía de Caguas, sin que pudiese obtener información pertinente a la ubicación de los Hijos.

En septiembre de 2024, el Demandante solicitó que se autorizara el emplazamiento por edicto de los Hijos, incluido el que la Viuda informó vive en Puerto Rico. Se acompañó una declaración jurada preparada por la emplazadora (la "Segunda Declaración"). Señaló que habló nuevamente con la Viuda y que esta le indicó que ella no tiene "ninguna comunicación" con los Hijos. Consignó que, a través de un sitio web (*truepeoplesearch*), se había comunicado con un Joel González Ramos, pero que este le indicó que no era hijo del Causante. Indicó que buscó a los Hijos en varias plataformas de internet (*google, facebook, superpagespr, truepeoplesearch, poderjudicial.pr*), sin éxito. También aseveró que había visitado la alcaldía y el cuartel del Policía de Caguas, además del servicio postal, sin que pudiese obtener información pertinente que le permitiese ubicar a los Hijos.

Mediante una Orden notificada el 24 de septiembre (la "Orden"), el TPI denegó la solicitud de emplazar por edictos a los Hijos. El TPI no suplió razón alguna para su determinación ni indicó qué gestiones adicionales podría haber realizado el Demandante para intentar emplazar personalmente a los Hijos.

Inconforme, el 24 de octubre, el Demandante presentó el recurso que nos ocupa; arguye que acreditó "gestiones específicas, detalladas y potencialmente efectivas" para ubicar a los Hijos, por lo cual el TPI debió autorizar la solicitud de emplazamiento por edictos. Conforme lo autoriza la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), resolvemos sin ulterior trámite.

II.

El emplazamiento es el mecanismo procesal que permite al tribunal adquirir jurisdicción sobre un demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Su propósito es notificar a la parte demandada que existe una acción judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 30 (2014); *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 863 (2005); *Medina v. Medina*, 161 DPR 806, 818 (2004). Como norma general, la parte demandada debe ser emplazada personalmente y, como excepción, se permite el emplazamiento por edicto. *Secretariado de la Conferencia Judicial y Notarial, Informe de Reglas de Procedimiento Civil*, marzo 2008, pág. 48.

La Regla 4.6 de las de Procedimiento Civil gobierna todo lo relacionado con el emplazamiento por edicto y su publicación. Se autoriza así al TPI a, en determinadas circunstancias, dictar una orden para disponer que el emplazamiento se haga por un edicto. 32 LPRA Ap. V, R. 4.6(a). Se establece que, "[c]uando la persona a ser emplazada" no pueda ser ubicada, se podrá ordenar que el emplazamiento "se haga por un edicto". *Íd.*

Para lograr la referida autorización, deberá comprobarse "mediante declaración jurada" las "diligencias" dirigidas a ubicar a la parte demandada. *Íd.* La declaración debe contener "hechos específicos y no meras conclusiones o generalidades". *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 988 (2020) *citando a Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 25 (1993). El término para emplazar comienza a transcurrir nuevamente cuando se expiden los emplazamientos por edicto, ya sea que tal expedición ocurra con o sin la solicitud de la parte demandante. *Sánchez Ruiz*, 203 DPR a las págs. 991-992.

La orden de autorización dispondrá, además, "que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo ..., al lugar de su última dirección física o postal conocida". 32 LPRA Ap. V, R. 4.6(a). Ahora bien, esta disposición provee para que el demandante pueda ser relevado del requisito de notificación, si justifica, mediante declaración jurada a satisfacción del tribunal, que, a pesar de los esfuerzos dirigidos a encontrar una dirección física o postal, ello no fue posible. *Íd.* Véase, además, *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR ___, 2021 TSPR 124, pág. 7 (2021).

Efectuado el emplazamiento, se debe presentar ante el TPI la constancia del diligenciamiento dentro del término establecido. Regla 4.7 de Procedimiento Civil, 32 LPRA Ap. V. Cuando el emplazamiento se hace por edicto, "se probará su publicación mediante la declaración jurada del (de la) administrador(a) o agente autorizado(a) del periódico, acompañada de un ejemplar del edicto publicado y de un escrito del abogado o abogada que certifique que se depositó en el correo una copia del emplazamiento y de la demanda". *Íd.*

III.

Concluimos que el TPI erró al no autorizar el emplazamiento por edictos de los Hijos, pues, a través de la Primera Declaración y la Segunda Declaración, la Demandante demostró que realizó gestiones suficientes y específicas para ubicar a los Hijos.

En efecto, según surge de las referidas declaraciones, la emplazadora habló en dos ocasiones con la Viuda, quien no ofreció información que le ayudara a ubicar a los Hijos e, incluso, aseveró que no tenía comunicación con ellos ni sabía sus direcciones, teléfonos o segundos apellidos. No obstante, la Viuda sí indicó que

los Hijos habían repudiado la herencia del Causante. No surge del récord alguna explicación para la aparente contradicción entre la supuesta falta de comunicación de la Viuda con los Hijos y su conocimiento de una supuesta repudiación de la herencia por estos.

También surge de las declaraciones juradas que la emplazadora intentó ubicar a los Hijos a través de varias plataformas de internet, así como a través de visitas a la alcaldía y el cuartel de la Policía de Caguas. En atención a la ausencia de un segundo apellido para tres de los Hijos y la ausencia de información adicional sobre estos, concluimos que, en efecto, la emplazadora no tuvo, ni podría tener, éxito en ubicar a los Hijos a través de estos mecanismos y, además, que no existen gestiones adicionales que se podrían realizar que conlleven una probabilidad razonable de rendir frutos.

En fin, las diligencias realizadas por el Demandante, a la luz de la limitada información disponible, constituyeron esfuerzos suficientes y razonables para emplazar personalmente a los Hijos. Las declaraciones no se basaron en generalidades, sino que demuestran que la emplazadora realizó actos específicos y reiterados para ubicar a los Hijos. Como dichas gestiones no fueron exitosas, el TPI debió autorizar que los Hijos fuesen emplazados por edicto.

IV.

Por los fundamentos expuestos, se expide el auto de *certiorari* solicitado, se revoca la Orden recurrida y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones